IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                   :      CASE NO. 12-01368 (ESL)

JOSE A. ZAMBRANA ARROYO     :      CHAPTER 7

       Debtor                 :

                                   :

## OPINION AND ORDER

This case came before the court on June 26, 2012 for a hearing to consider Scotiabank's motion requesting retroactive relief from the automatic stay in order to validate a judicial sale of real property executed after the petition date. Scotiabank alleges that the judicial sale was executed relying on an agreement reached with the debtor and approved by the court in debtor's prior bankruptcy case and which allegedly was effective in rem and binding in any future bankruptcy petition filed within two years from the entry of the order approving the stipulation. The debtor opposed the request alleging that the terms of the stipulation in the prior case were not enforceable in the present case and that the factors required for the entry of an order granting retroactive relief from the automatic stay were not present in this case. During the hearing the debtor was asked and given the opportunity to contest the factual allegations in Scotiabank's motion for retroactive relief from the automatic stay as the court found that the same appeared from the case records and the exhibits attached to and in support of the motion. The debtor limited his opposition to conclusive statements that were insufficient to contest the factual allegations in Scotiabank's motion. Based on the uncontested facts the court found in open court that Scotiabank was entitled to retroactive relief from the automatic stay and asked that a draft of an order be submitted to the court with copy to debtor. The proposed order was submitted. However, the court opts to enter a separate order.

### Jurisdiction

This court has jurisdiction to enter a final order on a contested matter involving the retroactive relief from the automatic stay pursuant to 28 U.S.C. §§ 157(b)(2)(A,E,G) as the issue is a core proceeding.

The Position of the Parties

Scotiabank alleges that the history of the controversy trying to collect the amounts owed by the debtor that spans through four bankruptcy petitions, that Scotiabank relied on the agreement reached by the parties concerning the relief of stay in the previous petition, and that the instant fourth petition was filed on the eve of the scheduled judicial sale, constitute special circumstances warranting the retroactive relief from the automatic stay. Debtor opposes the request for retroactive relief arguing that Scotiabank has acted in bad faith, that granting retroactive relief would circumvent the cause of action initiated by the debtor in a separate adversary proceeding, and that the facts in this case do not meet the factors necessary to grant retroactive relief from the automatic stay.

Facts

As stated by the court at the June 26, 2012 hearing, the factual allegations in Scotiabank's motion for retroactive relief from the automatic stay are uncontested as they appear from documents in the record and from the exhibits to the motion. The uncontested facts are the following:

1. Scotiabank, as successor in interest to RG Premier Bank is a secured creditor of the debtor as holder of a note executed in 2002 for the amount of $175,000, subsequently amended in 2004 to $222,373.02, and secured with a mortgage over real property of the debtor located in Urbanización Royal Palm Extension, Minillas Ward, Bayamon, Puerto Rico.

2. The notes were given in pledge to RG Premier, now Scotiabank, to guarantee a commercial credit facility originally in the amount $175,000 and later increased to $222,373.02.

3. The property given as collateral for the loan, in addition to being debtor's residence, is used as a car repair business. The debtor has also built several apartments to supplement his income.

4. On January 18, 2006 RG Premier, now Scotiabank, filed a complaint before the Superior Court of Puerto Rico, Bayamon Part, to foreclose the pledge and mortgage note. Judgment was entered in favor of RG Premier in May 2007.

5. The debtor owes Scotiabank as of February 27, 2012 the amount of $321,453.75, including principal, accrued interest, late charges, escrow and legal fees,

6. On August 23, 2010 the property given as collateral to RG Premier (Scotiabank) was appraised as having a liquidation value of $256,000 and a market value of $320,000. The debtor

2

included the property in Schedule A for a value "TBD" (to be determined).

7. On February 27, 2012 the debtor filed the instant petition under Chapter 7 of the Bankruptcy Code. This is debtor's fourth petition. All petitions have been filed on the eve of foreclosure to protect the property used as his place of business and as his residence.

8. On August 27, 2003 the debtor filed his first petition under chapter 13 of the Bankruptcy Code, case number 03-09298. The case was dismissed on July 19, 2005 for failure to make current payments under the confirmed chapter 13 plan. The chapter 13 plan dated July 16, 2004 was confirmed after the debtor settled the objection to confirmation filed by RG Premier through a refinancing of the property.

9. On June 25, 2007 the debtor filed his second petition under chapter 13 of the Bankruptcy Code, case number 07-03501. The chapter 13 plan was confirmed after RG Premier withdrew its objection and withdrew the funds that had been consigned by the debtor in its favor. On June 22, 2009 RG Premier moved the court to dismiss the petition for debtor's failure to make the current payments. The debtor did not oppose the motion and the case was dismissed on August 24, 2009.

10. On December 10, 2010 the debtor filed his third petition under chapter 13 of the Bankruptcy Code, case number 10-11581. On March 18, 2011 RG Premier moved the court for relief from the automatic stay. The debtor opposed the motion to lift stay. The contested matter came before the court for a final hearing on May 10, 2011. The court ordered the debtor to provide adequate protection to RG Premier by curing the arrears within 30 days; and, upon failure to comply, the stay would be deemed lifted without further order or hearing.

11. On May 26, 2011 the debtor and Scotiabank de Puerto Rico (RG Premier) filed a stipulation in case number 10-11581 regarding the motion to lift stay. The stipulation was approved by the court on June 20, 2011. The stipulation is titled "Agreement for Relief from Stay." The stipulation provided that the stay be modified in favor of Scotiabank to allow foreclosure proceedings to continue in state court on the condition that the judicial sale not be held until after a certain date. The stipulated amount owed as a secured debt to Scotiabank was $298,205.81 as of December 15, 2010. According to the stipulation, the last payment on the loan became due on November 24, 2009. The parties agreed on adequate protection payments in the amount of $1,990 per month during the

period from June 1, 2011 to October 1, 2011. The debtor was allowed this period to either sell or refinance the property and pay in full the amounts owed to Scotiabank. The terms of the stipulation provided that a judicial sale would not be held on or before October 1, 2011. If the debtor was not able to sell or refinance the property and pay Scotiabank in full on or before October 1, 2011, Scotiabank would sell the property in a judicial sale.

The stipulation provided that the order lifting stay would be considered res judicata on any future filing by the debtor and "[w]ith regard to this property the relief order will be binding in any future case filed under US Code Title 11 [sic] purporting to affect such property filed not later than two years from the time of the entry of the Order granting this agreement."

12. Case number 10-11581 was voluntarily dismissed in September 2011, less than three months after the stipulation was approved, and less than one month after the chapter 13 plan was finally confirmed. The debtor included in Schedule A the property given as collateral to RG Premier (Scotiabank) for a value in the amount of $385,000.

13. The chapter 7 trustee filed a report of no distribution in the instant case. Thus, the estate has no interest in the present controversy as there will not be a distribution to unsecured creditors.

Applicable Law

The pronouncements by the United States Court of Appeals for the First Circuit in In re Soares, 107 F.3d 969 (1st Cir. 1997) control the outcome of the contested matter before the court, that is, whether Scotiabank should be granted retroactive relief from the automatic stay. The Soares decision commences by declaring the importance that the automatic stay must "be nurtured if it is to retain its vitality." Id. at 971. The automatic stay is "among the most basic of debtor protections under bankruptcy law." Id. at 975. The court adopted the view that actions in violation of the automatic stay are void. Consequently, "the burden of validating the action after the fact [is placed] squarely on the shoulders of the offending creditor." Id. at 976.

The Congressional grant of annulment in section 362(d) gives the bankruptcy courts the authority to grant retroactive relief from the automatic stay. Id at 976-977. Due to the fundamental importance of the automatic stay to bankruptcy cases, the discretionary authority of the bankruptcy court is limited. Id at 977. The "retroactive relief from the automatic stay must rest on a set of facts

4

that is both unusual and unusually compelling. " Id at 977.

This court must weigh all facts, or the totality of the circumstances, to determine if there are unusual and compelling circumstances warranting the extraordinary remedy of granting retroactive relief from the automatic stay. See In re Bright, 338 B.R. 530 (1st Cir. BAP 2006).

Discussion

The uncontested facts show that Scotiabank(RG Premier) has been trying to collect its past due account since 2003 and has provided the debtor with opportunities to do so for the last nine years. Finally, an agreement was reached in June 2011. The agreement provided a term within which the debtor was going to pay in full the loan which had become due on November 24, 2009. The full amount must have been paid on or before October 1, 2011. Failure to make the payment entitled Scotiabank to proceed with the judicial sale, even if the debtor filed a bankruptcy petition within two years from the date that the court approved the petition. Scotiabank, relying on the stipulation, scheduled the judicial sale for February 28, 2012. On February 27, 2012, at 3:57 PM, the debtor filed the instant petition. The filing of the instant petition literally on the eve of the judicial sale in spite of the terms of the agreement reached by the parties, duly represented by counsel, had the intent of forestalling the process that had been going on for the last nine years and which Scotiabank expected to terminate with the judicial sale.

In addition, the property has no equity. Therefore, the prospect of a refinancing to pay Scotiabank is nihil. If the debtor could have sold the property he should have done so before October 1, 2011. The sale did not happen. In a last ditch effort the debtor claimed to be afforded the opportunity to engage in a loss mitigation/loan modification process. However, such an opportunity is not available due to the nature of the loan (a commercial loan) and because the lender is not amenable to consider the same. Due to these facts the debtor does not have an equity in the property and the estate has already noticed that it has no interest in the property and there will not be a distribution to unsecured creditors in this case.

Conclusion

The opportunities afforded to the debtor to pay Scotiabank's secured loan, the timing of the serial bankruptcy petitions, particularly the instant fourth petition, the reliance on the terms of

5

the stipulation and the lack of equity in the property, combined, constitute unusual and compelling circumstances to grant retroactive relief from the automatic stay and validate the judicial sale conducted less that 24 hours after the filing of the petition.

In view of the foregoing, Scotiabank's motion for retroactive relief from stay is hereby granted.

SO ORDERED.

In San Juan, Puerto Rico, this 12ᵗʰ day of July, 2012.

_____
ENRIQUE S. LAMOUTTE
U.S. Bankruptcy Judge